**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of M.L., | No. 46078-5-II |
| GARRETT LAIL, | |
| Respondent, | |
| and | |
| KIM BRIGGS, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Kimberly Briggs appeals the trial court's denial of her 2011 relocation petition and its order granting modification of the parenting plan. Briggs argues that the trial court abused its discretion because its findings are not supported by the record. Although portions of two findings are not supported by the record, the remainder of the trial court's findings are supported by the record and those findings support its conclusions. Accordingly, we affirm the trial court.

FACTS

I. Background

Briggs and Garrett Lail have one son, ML.  In May 2006, the trial court granted Briggs primary custody of ML.[1]  The original parenting plan granted Lail four overnight visits and two day visits every month.  At that time, Briggs and ML apparently lived in Grays Harbor County, where Lail also lived.

Briggs and ML lived in Olympia for one year while Briggs pursued a bachelor's degree in social services.  They then moved back to Grays Harbor County.  In 2009, ML lived with Lail in Grays Harbor County for two months at Briggs's request while she sought employment in Spokane.  Briggs filed a petition to relocate to Spokane, which was denied.  She then returned to Grays Harbor County and began commuting to Thurston County to work as a customer care representative for Verizon Wireless.

Since 2009, ML has attended Stevens Elementary School in Grays Harbor County.  Lail testified that ML was integrated into his home with Briggs's consent.  Lail's calendar was admitted into evidence and showed that ML lived with Lail four out of every seven days for at least six months before Briggs filed her 2011 petition to relocate.  Lail testified that ML has lived with Lail since 2011.  Briggs moved to Olympia in 2011, but has been unemployed since April 2013.

---

[1] Throughout Briggs's brief she cites to "SCP," which we assume refers to supplemental clerk's papers.  Neither party filed a supplemental designation of clerk's papers and the SCP she cites to is not in our record and so we do not consider or rely upon Briggs's references to a supplemental record.

II. PROCEDURAL HISTORY AND TRIAL

Briggs filed a notice of intended relocation to Thurston County in early June 2011 to remain at her Verizon Wireless job and to save on commuting costs. Lail objected to relocation and filed a petition to modify the 2006 parenting plan to designate him as the primary residential parent. At a hearing in late June 2011, the trial court orally denied Briggs's relocation request, temporarily changed the primary residential parent to Lail, advised the parties that it would reconsider the relocation in a year, and directed the parties to create a liberal visitation schedule. The parties were unable to agree on a new visitation schedule. Briggs moved to Olympia in July. At the August follow-up hearing, the trial court denied Briggs's relocation request, temporarily designated Lail as the primary residential parent pending a trial on Lail's motion to modify, and established Briggs's visitation schedule.

Briggs filed a notice of appeal on the trial court's denial of her relocation, and the trial court struck the modification trial. In September 2013, we held that the trial court failed to address the required statutory factors for relocation and remanded for consideration of relocation and modification. *In re M.L.*, noted at 176 Wn. App. 1020, 2013 WL 4857993, at *5. We vacated the September order, thus "placing the parties in the same position as they were when Briggs filed her relocation notice" with Briggs as the primary residential parent. Clerk's Papers (CP) at 14.

At the one-day retrial in December 2013, the parties and one other witness testified. Briggs testified that she was ML's primary caretaker for the first eight years of his life, worked at his day care while obtaining her degree, volunteered for his school, took him to medical appointments, and facilitated his relationships with friends and family. Beginning in June 2011, at Briggs's request to accommodate her work schedule, Lail cared for ML on Mondays from seven in the

morning until Wednesdays at six in the evening and Friday from seven in the morning until Saturday at six in the evening.

Briggs affirmed that she relocated to Thurston County in 2011 for employment and to lessen commuting costs and asserted that because unemployment rates were lower in Thurston County than in Grays Harbor County, it was still in her best economic interest to remain there.[2] Briggs testified that Lail did not oppose her moving to Olympia in 2009 or in 2011. Briggs lost her job at Verizon in April 2013 and did not actively seek a job in social services pursuant to her bachelor's degree, or any job, because she felt she could not commit to a new position while in court proceedings. But she did begin networking and researching new jobs.

From around 2006 to 2009, ML befriended children from his day care in Olympia and in 2011, befriended children living in Briggs's apartment complex. Briggs has close friends in Olympia as well as her two cousins, their spouses, and children, all of whom know ML.

Briggs did not have auto insurance or a vehicle because her car broke down as of 2013. She admitted that she was cited for using her cell phone while driving, once in 2011 and once in 2012, but stated that ML was not in the car during those incidents. At the time of trial, Briggs lived in a one-bedroom apartment and ML would sleep in her bed during his visits, but Briggs stated that her Section 8 housing provider would give her a two-bedroom apartment if she received primary custody of ML.

---

[2] Briggs tried to introduce unemployment rate data from Grays Harbor County and Thurston County, but the trial court sustained a hearsay objection to the data. Briggs did not designate this proposed exhibit as part of the record for appeal.

Briggs testified that there are many community activities available to ML in Thurston County, including fairs and a children's theater, and Briggs's apartment offers many amenities including a playground, pools, and a biking trail. Briggs admitted that she allows ML to skateboard without a helmet and once allowed him to ride in the open bed of a pickup truck without a seat belt. Briggs tried to admit data about school district test scores and student well-being from the Office of Superintendent of Public Instruction website and from the Washington State Department of Social and Health Services Research and Data Analysis section.[3] The trial court sustained objection to this data as hearsay and as technical data needing expert testimony to validate it.

ML had behavioral issues in 2011, including difficulty staying still in class and getting into a fight, and his counselor concluded that his problems stemmed from disputes between his parents. Briggs terminated ML's counseling because she believed ML's issues stemmed from "issues between me and [Lail]" and that ML could be helped if the parties resolved their issues. Report of Proceedings (RP) (Dec. 10, 2013) at 69. Briggs admitted that she talked to ML about the status of the litigation when he was nine years old. Briggs also admitted that she and Lail do not communicate well about ML. Briggs testified repeatedly that Lail engaged in "controlling, possessive, abusive behaviors" and was verbally and emotionally abusive, but did not offer any examples in support of this allegation. RP (Dec. 10, 2013) at 127. She also alleged Lail's motivation for opposing the relocation and seeking modification was to avoid paying more for child care, but did not offer any admissible evidence to that effect.

---

[3] Briggs did not designate these proposed exhibits for the appellate record.

Lail testified that he and ML live in Grays Harbor County. Lail and Briggs discussed her moving to Olympia before she started school for her bachelor's degree, but Lail testified that he did not agree to her relocation to Olympia in 2011. The trial court admitted a calendar that Lail kept to track his residential time with ML that confirmed Lail had ML four days a week for at least six months before the 2011 petition to modify. From the summer of 2011 to the time of the hearing, Briggs had ML only twice a week. Lail facilitated contact with ML and his paternal grandfather and both grandmothers. Lail also received child care help from his neighbor who works at ML's school. ML is friends with his neighbor's three children and other children from his school. Lail takes ML to the movies, gym, camping, clam digging, skating, and is planning to sign up ML for sports teams.

Lail confirmed that ML sometimes has behavioral issues including nightmares, sensitivity to things he sees on television, and frustration when he finds sports challenging, but stated many of ML's problems stem from the parties' conflict. Lail and Briggs can "somewhat get along to make the best decision for [ML]," but said they fight and generally cannot communicate. RP (Dec. 10, 2013) at 89. He admitted he has gotten angry in the past while arguing with Briggs and said things he should not have said.

Lail was employed by a chimney cleaning business. He was negotiating to take over the business at his employer's retirement and stated his employer helped watch ML sometimes.

The drive from Lail's to Briggs's home in Olympia is a little over an hour. Lail estimated the commuting expense would be the same if relocation was granted, but he anticipated he would have to pay child support and would pay more for child care than what he paid his neighbor to

6

watch ML. ML's school and day care and Lail's work place are all in a one-mile radius from each other.

### III. TRIAL COURT FINDINGS AND ORDERS

The trial court made written findings about each relocation factor. Of the ten factors considered by the trial court, it found five factors weighed against relocation, three factors did not apply, and two of the factors had a neutral effect on the outcome. In its oral ruling, the trial court noted that it knew that the principal at Stevens won awards and its belief that the school is "outstanding." RP (Dec. 10, 2013) at 155. The trial court also stated that it did not doubt Briggs's testimony that unemployment rates were higher in Grays Harbor County than Thurston County. But the trial court stated it was unaware if that data applied to individuals with degrees like Briggs had. And the trial court stated it believed that "[t]here's all kinds of social work jobs in Grays Harbor," citing to the existence of several agencies providing social services in the area and that the juvenile court there recently hired someone with a social work degree. RP (Dec. 10, 2013) at 148. The trial court denied relocation, concluding that relocation would have detrimental effects that outweighed any "minor, almost immeasurable benefit" to Briggs and ML. RP (Dec. 10, 2013) at 158.

The trial court also granted modification of the parenting plan changing the primary residential parent from Briggs to Lail. The trial court concluded that modification was appropriate because "a substantial change of circumstances has occurred in the circumstances of the child . . . and the modification is in the best interest of the child." CP at 84. The trial court found that ML was integrated into Lail's household with Briggs's consent, it would be detrimental to ML's

"physical, mental or emotional health" to place ML into Briggs's primary residential custody, and modification was in ML's best interests. CP at 86.

Briggs appeals the orders denying relocation and allowing modification.

ANALYSIS

I. STANDARD OF REVIEW

We review a trial court decision about relocation and modification of a parenting plan for abuse of discretion. *In re Marriage of Horner*, 151 Wn.2d 884, 893, 93 P.3d 124 (2004). Discretion is abused if the court's decision is manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). A trial court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; or it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard. *Littlefield*, 133 Wn.2d at 47.

We uphold trial court findings if they are supported by substantial evidence. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). "'Substantial evidence' exists if the record contains evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." *In re Marriage of Fahey*, 164 Wn. App. 42, 55, 262 P.3d 128 (2011). We do not review credibility determinations or weigh evidence on appeal. *In re Marriage of Meredith*, 148 Wn. App. 887, 891 n.1, 201 P.3d 1056 (2009). The party challenging the findings of fact bears the burden of demonstrating that substantial evidence does not exist. *In re Marriage of Grigsby*, 112 Wn. App. 1, 9, 57 P.3d 1166 (2002).

## II. RELOCATION

### A. RELOCATION FACTORS

In 2000, the legislature passed the "Child Relocation Act" (CRA), RCW 26.09.405-.560, which shifts the analysis away from solely the best interests of the child to an analysis focusing on the best interests of both the child and the relocating person. LAWS OF 2000, ch. 21; *Horner*, 151 Wn.2d at 886-87. The CRA creates a presumption that the relocation will be allowed, but that presumption may be rebutted by the objecting party. The objecting party must prove that "the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person" based upon 11 child relocation factors. RCW 26.09.520. The factors are

>     (1) [t]he relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;
>     (2) Prior agreements of the parties;
>     (3) Whether disrupting the contact between the child and the person with whom the child resides a majority of the time would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;
>     (4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191;
>     (5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;
>     (6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;
>     (7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;
>     (8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;
>     (9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;
>     (10) The financial impact and logistics of the relocation or its prevention; and
>     (11) For a temporary order, the amount of time before a final decision can be made at trial.

RCW 26.09.520. These factors are not listed or weighed in any particular order. RCW 26.09.250;
*Horner*, 151 Wn.2d at 887.

### B. THE TRIAL COURT'S RELOCATION FINDINGS

Briggs challenges the trial court's analysis of 10 of the 11 relocation factors. She argues
that the findings are not supported by substantial evidence in the record. We disagree.

Briggs's challenges to the trial court's findings of fact are best characterized as arguments
about the trial court's credibility determinations and the weight placed on the evidence. The trial
court discounted Briggs's testimony that she and ML have friends and family in Thurston County;
that Lail agreed to Briggs's relocation in 2009 and 2011; that Lail had bad faith, monetary-based
motivations to object to relocation; and that there remains better employment opportunity for her
in Thurston County rather than Grays Harbor County. The trial court instead gave greater weight
to Lail's testimony that he did not agree to Briggs's relocation, that he opposed relocation in good
faith, that ML's emotional vulnerability stemmed from the parents' fighting and not from living in
Grays Harbor County, and that the parties could not get along to make even minor parenting
decisions to allow for shared custody or more frequent exchanges.

But we do not review credibility determinations or weigh evidence on appeal. *Meredith*,
148 Wn. App. at 891 n.1. Thus, discounting aspects of Briggs's testimony and giving greater
weight to aspects of Lail's testimony are not trial court decisions that we can review.

Both parties presented at least some evidence about each factor and the trial court's
findings address each of the 10 contested relocation factors. The burden here was on Lail to rebut
the presumption in favor of relocation and to present evidence that "the detrimental effect of the
relocation outweighs the benefit of the change to the child and the relocating person." RCW

26.09.520. As described below, Lail presented evidence about each relocation factor and the detriment to ML of being relocated with Briggs to Olympia. Thus, we conclude that the trial court's findings were supported by substantial evidence. *Horner*, 151 Wn.2d at 894. Below is a detailed review of each factor, the trial court's related findings of fact, and a summary of the evidence presented.

1.      RCW 26.09.520(1) – CHILD'S SIGNIFICANT RELATIONSHIPS

The trial court must consider "[t]he relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life." RCW 26.09.520(1). Here, the trial court found that (1) ML has a solid relationship with each parent, (2) ML has a relationship with his grandparents and friends, (3) Lail has a strong support network in Grays Harbor County, and (3) *Briggs has little or no support network in Thurston County and ML has no identified friends there.*

Lail testified in great detail that since 2011, he has spent the majority of time with ML and about the relationships he helped ML foster with ML's grandparents, children at ML's school and day care, and Lail's employer and Lail's neighbor who provide daily child care for ML. Briggs testified about friends and family that she and ML have in Thurston County. Thus, we conclude that although the above emphasized portion of the trial court's finding of fact is unsupported by the record, the remainder of the trial court's finding is based on substantial evidence.

2.      RCW 26.09.520(2) – PRIOR AGREEMENT OF THE PARTIES

Next, the trial court considers whether the parties had any prior agreements regarding relocation. RCW 26.09.520(2). The trial court found that the parties had no agreement pertaining to Briggs relocating to Olympia. While Briggs said Lail did not oppose her relocation in 2009 or

2011, Lail testified that he did not agree to her relocation in 2011. We do not disturb a trial court's credibility determination. *Meredith*, 148 Wn. App. at 891 n.1. We conclude that this finding is supported by substantial evidence.

3.      RCW 26.09.520(3) – DISRUPTION OF CONTACT

The trial court also must consider "[w]hether disrupting the contact between the child and the person with whom the child resides a majority of the time would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation." RCW 26.09.520(3). The trial court found that because ML had lived with Lail for the majority of the time since 2011, relocation would cause a more detrimental disruption to their relationship. But the trial court also found that a large portion of the time that ML lived with Lail resulted from a vacated court order.

Both Lail and Briggs confirmed that ML has been living primarily with Lail since 2011. This finding acknowledges the challenge when evaluating this factor given that as of 2013, Briggs was the legal primary residential parent after we reversed the order granting primary custody to Lail, but Lail was the person objecting to relocation and the one with whom the child most recently lived for the majority of the time. *M.L.*, 2013 WL 4857993, at *5.[4] But this finding is supported by the evidence that ML has primarily lived with Lail since 2011. Thus, we conclude that this finding is supported by substantial evidence.

---

[4] Briggs relies on two cases to argue that the trial court erred by apparently treating Lail as the parent that the child resided with for the majority of the time for the purpose of evaluating this factor when *she* was the legal primary residential parent. But there is nothing in the trial court's oral or written findings suggesting that it treated Lail as the primary residential parent rather than the objecting parent. Thus, we reject Briggs's argument.

12

4.      RCW 26.09.520(4) – LIMITATIONS TO RESIDENTIAL TIME

Further, the trial court must consider whether either parent is subject to a limitation under RCW 26.09.191. RCW 26.09.520(4). A parent's residential time may be restricted based on "abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development." RCW 26.09.191(3)(e). The trial court found that this factor did not apply because no restriction under RCW 26.09.191 has been placed on either party.

Briggs testified that Lail was verbally and emotionally abusive toward her. Lail testified that he has gotten angry in the past while arguing with Briggs and said things he should not have said. But neither party testified that Lail engaged in abusive behaviors that harmed ML, although both testified that ML's behavioral issues stemmed from the parents' conflict. Briggs fails to meet her burden to show that this finding is unsupported by the evidence at trial. Briggs also fails to show that Lail's residential time was restricted or should be restricted under RCW 26.09.191(3)(e). We conclude that this finding is supported by substantial evidence.

5.      RCW 26.09.520(5) – GOOD FAITH AND REASONS FOR SEEKING/OPPOSING RELOCATION

Also the trial court must consider "[t]he reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation." RCW 26.09.520(5). The trial court found that both parties had legitimate reasons for either pursuing or opposing relocation. This finding is supported by substantial evidence presented by Briggs showing that she sought relocation for employment-related reasons and Lail's evidence showing that he had employment-related and personal reasons to remain in Grays Harbor County. We conclude that this finding is supported by substantial evidence.

6.     RCW 26.09.520(6) – IMPACT OF RELOCATION

The trial court must consider "[t]he age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child."   RCW 26.09.520(6).  The trial court found that ML did not have special needs but had some emotional vulnerability, relocation would have a negative impact caused by Briggs discussing the pending litigation with ML, and ML's needs were being met in Grays Harbor County.

Here, both parents testified that ML had some behavioral issues stemming from their conflict.  Briggs admitted to discussing the case with ML when he was nine.  Both parties agreed that ML had primarily lived with Lail since 2011, and Lail offered testimony that supported the finding that ML's needs were met in Grays Harbor County.  We conclude that this finding is supported by substantial evidence.

7.     RCW 26.09.520(7) – QUALITY OF LIFE IN CURRENT AND PROPOSED LOCATIONS

Next, the trial court must consider "[t]he quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations." RCW 26.09.520(7).  The trial court found that while there were more and varied activities in Thurston County than in Grays Harbor County, "the quality of life, resources, and opportunities available to the child in Grays Harbor County are not lacking in any way" and that Lail took advantage of the resources in Grays Harbor County.  CP at 91.  The trial court also found that "the child attends Stevens Elementary School, which the court considers one of the better elementary schools in the area. *Knowing that the school and many of its educators have won various awards in recent years.*"  CP at 91 (emphasis added).  Finally, the trial court found "[n]o information" was

14

presented about what school ML might attend in Thurston County or what quality of opportunities might be offered at that school. CP at 91.

Here, both parties testified about activities available in their areas offering substantial evidence that while there may be more to do in Thurston County, there are still many activities in Grays Harbor County that ML and Lail can engage in. Lail did not offer any evidence about ML's school; rather, the trial court relied on its personal knowledge that Stevens Elementary is an "outstanding school" and the principal there is an award-winning principal. RP (Dec. 10, 2013) at 155. Briggs did not identify a school that ML could attend in Thurston County and did not offer any admitted evidence about educational opportunities for ML.[5] Although the above emphasized portion of the trial court's findings of fact is unsupported by the record, the remaining findings are based on substantial evidence. Thus, we conclude that these findings are supported by substantial evidence.

8.      RCW 26.09.520(8) – ALTERNATIVES TO CONTINUE RELATIONSHIP

The trial court must consider "[t]he availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent." RCW 26.09.520(8). The trial court found this factor did not apply since the parents cannot effectively communicate and Briggs already relocated over an hour away from Lail such that they could not share custody or make more frequent exchanges of ML without interfering with ML's education and social

---

[5] The trial court excluded evidence that Briggs tried to admit regarding data from the Office of Superintendent of Public Instruction website and from the Washington State Department of Social and Health Services Research and Data Analysis section. Briggs challenges the trial court's exclusion of the data. But Briggs did not designate these proposed exhibits as part of the appellate record and, thus, we cannot evaluate whether the trial court abused its discretion in excluding this evidence.

opportunities. We conclude that this finding is supported by the record that shows Briggs has already moved and intends to stay in Olympia and where both parties said they cannot communicate without fighting.

9.     RCW 26.09.520(9) – ALTERNATIVES TO RELOCATION

The trial court must consider whether there are any alternatives to relocation or if the other party could relocate as well. RCW 26.09.520(9). The trial court found that because Briggs lost her job in 2013 and has not actively pursued another job, there is "*no real employment-related purpose justifying a relocation of [ML]*." CP at 92 (emphasis added). The trial court also found that given Lail's close relationship with his employer and their negotiations for Lail to assume the business when the owner retires, it is not feasible or desirable for Lail to relocate.

Here, Briggs testified that because unemployment rates are lower in Thurston County than in Grays Harbor County, it was still in her best economic interest to remain in Olympia. Briggs also testified that she was fired in April 2013, and had not actively sought employment since then because she thought she could not commit to a new job in the midst of preparing for litigation. She did state though that she was networking and researching jobs. Lail testified that he plans to eventually run the business where he works and has no reason to leave Grays Harbor County.

The above emphasized portion of this finding disregards Briggs's testimony that she was networking and researching jobs in Thurston County and regarding the lower unemployment rate in Grays Harbor County compared to Thurston County. But this emphasized portion is also supported by substantial evidence that Briggs is no longer employed in Thurston County and has not actively sought employment there. And the remainder of the finding is supported by Lail's testimony. Thus, we conclude that this finding is supported by substantial evidence.

16

10.     RCW 26.09.520(10) – FINANCIAL AND LOGISTICAL IMPACT

Finally, the trial court must consider the financial impact and logistics of relocation or its prevention.  RCW 26.09.520(10).  Here, the trial court found minimal impact to logistics or finances if relocation was granted except transportation costs for a different visitation schedule.  Specifically, the trial court found that Briggs does not provide child support to Lail, that Lail currently pays all expenses for care of ML, and that if relocation were granted, Lail would pay child support but that would likely still be lower than paying all costs.  Here, the parties testified that the transportation costs to facilitate visitation would remain about the same if relocation was granted and that Briggs did not pay Lail child support while Lail paid for almost all of ML's expenses.  Thus, we conclude that this finding is supported by substantial evidence.

III.  MODIFICATION

A.  PRINCIPLES OF LAW

RCW 26.09.260 governs modification of a parenting plan and states,

(1)  *Except as otherwise provided in subsections (4), (5), (6)*, (8), and (10) of this section, the court shall not modify a prior custody decree or a parenting plan unless it finds, . . . that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child. . . .
        (2)  In applying these standards, the court shall retain the residential schedule established by the decree or parenting plan unless:
           . . . .
        (c)  The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

However, RCW 26.09.260(6) governs modifications pursuant to a relocation as follows:

The court may order adjustments to the residential aspects of a parenting plan pursuant to a proceeding to permit or restrain a relocation of the child.  The person objecting to the relocation of the child or the relocating person's proposed revised residential schedule may file a petition to modify the parenting plan, including a

> change of the residence in which the child resides the majority of the time, without a showing of adequate cause other than the proposed relocation itself. A hearing to determine adequate cause for modification shall not be required so long as the request for relocation of the child is being pursued. *In making a determination of a modification pursuant to relocation of the child, the court shall first determine whether to permit or restrain the relocation of the child using the procedures and standards provided in RCW 26.09.405 through 26.09.560. Following that determination, the court shall determine what modification pursuant to relocation should be made, if any, to the parenting plan or custody order or visitation order.*

(Emphasis added.)

Therefore, in a relocation case, it is not necessary for the court to consider whether there is a substantial change in circumstances other than the relocation itself or to consider the factors contained in RCW 26.09.260(2). *In re Marriage of Raskob*, 183 Wn. App. 503, 513, 334 P.3d 30 (2014). A parent objecting to the relocation may file a petition to modify the parenting plan "'without a showing of adequate cause other than the proposed relocation itself.'" *Grigsby*, 112 Wn. App. at 15 (quoting RCW 26.09.260(6)). Ordinarily, in a relocation case, it will not be necessary for the trial court to consider whether there is a substantial change in circumstances or to consider the factors contained in RCW 26.09.260(2). *Grigsby*, 112 Wn. App. at 15. *Grigsby* further explains that the normal requirement of showing adequate cause is excused only so long as relocation is being pursued. 112 Wn. App. at 16. But where the parent is no longer pursuing relocation, the parent proposing the modification of the parenting plan must show a substantial change in circumstances. *Grigsby*, 112 Wn. App. at 16.

The best interests of the child are served by parenting arrangements that best maintain a child's emotional growth, health and stability, and physical care. RCW 26.09.002. And the best interest of the child is ordinarily served when the existing pattern of interaction between a parent

18

and child is altered only to the extent necessitated by the changed relationship of the parents or as required to protect the child from physical, mental, or emotional harm. RCW 26.09.002.

## B. THE TRIAL COURT'S FINDINGS WERE SUPPORTED BY THE RECORD

Briggs argues that the trial court erred when it granted modification because there was no finding of a substantial change in ML's environment and because the trial court's modification findings were not supported by the record. Specifically, she argues that the record does not support a finding that she consented to ML's integration into Lail's household. We conclude that substantial evidence supports the trial court's findings of fact and its findings of fact support its conclusion that modification is in ML's best interest.

Briggs makes numerous challenges to the trial court's findings regarding the exact dates of changes in her and Lail's custody arrangement and her level of involvement with ML. She does so presumably to refute that the trial court had support for a finding that a substantial change had occurred. But Briggs pursued relocation in July 2011, she never abandoned her relocation, and in fact relocated to Olympia. Therefore, RCW 26.09.260(6) applies and the trial court was not required to find a substantial change in circumstances or to consider the factors of RCW 26.09.260(2). *Raskob*, 183 Wn. App. at 513; *Grigsby*, 112 Wn. App. at 16. Thus, we reject her argument that the trial court did not have substantial evidence to support the finding of a substantial change.

Briggs's challenges to the trial court's findings of fact in support of modification, like those for relocation, are best characterized as arguments about the trial court's credibility determinations and the weight placed on the evidence. The trial court gave lesser weight to Briggs's testimony that (1) she stayed actively involved with ML and his schooling, (2) he has friends and family in

Thurston County, (3) she and ML share a variety of activities in Thurston County, (4) she began networking and looking for jobs to eventually apply for a new job, and (5) ML was not in the car when she was cited for texting while driving. But we do not review credibility determinations or weigh evidence on appeal. *Meredith*, 148 Wn. App. at 891 n.1. Thus, the trial court's decision to give less weight to aspects of Briggs's testimony than Lail's testimony are not decisions that we review.

The trial court's findings address whether modifying the plan to make Lail the primary residential parent best maintains ML's emotional growth, health and stability, and physical care. In support of modification, in summary, the trial court found that (1) the 2006 parenting plan awarded primary custody of ML to Briggs, but in 2009 after Briggs returned from seeking a job in Spokane, ML began living with Lail for the majority of the time; (2) ML has attended the same school in Grays Harbor County since 2009; (3) Briggs consented to ML spending additional residential time with Lail in 2011 after she relocated and began working in Thurston County; (4) ML was "integrated into the residence and care of his father, with the consent of Ms. Briggs, for the period of time between April 2009 through June 2011"; and (5) Briggs lost her job in Thurston County in April 2013, and has "refused to seek new employment since that time." CP at 85.

The trial court also noted that it heard evidence concerning allegations about Briggs's conduct, including that Briggs (1) terminated counseling for ML because she believed ML's behavior problems stemmed from the parties' conflict even as the conflict persisted, (2) discussed the status and details of the two-year pending litigation with ML when he was nine, (3) voluntarily reduced her time with ML in 2009 and 2013 contrary to the parenting plan, (4) did not require ML

20

to wear a helmet when skateboarding and allowed him to ride in the open bed of a pickup truck, and (5) was cited twice for using her cell phone while driving.

Finally, the trial court found that ML was integrated into Lail's household with Briggs's consent and that it would be detrimental to ML's "physical, mental or emotional health" to place ML into Briggs's primary residential custody and that modification was in ML's best interests. CP at 86.

The record supports these findings. The parties' testified that since 2011, ML has primarily lived with Lail and ML has attended Stevens Elementary in Grays Harbor County since 2009. ML has established connections with friends and family in Grays Harbor County. And Briggs consented to ML living with Lail in 2009 while she sought work in Spokane and consented to ML staying with Lail for more time than allocated in the parenting plan in 2011 after she moved to Olympia. The evidence also showed that Briggs (1) terminated counseling for ML because she believed ML's behavior problems stemmed from the parties' conflict even as the conflict persisted, (2) discussed the status and details of the pending litigation with ML when he was nine, (3) voluntarily reduced her time with ML in 2009 and 2013 contrary to the parenting plan, (4) did not require ML to wear a helmet when skateboarding and allowed him to ride in the open bed of a pickup truck, and (5) was cited twice for using her cell phone while driving.

Briggs is correct that by consenting to let ML stay at Lail's home more days than set by the 2006 parenting plan, she did not consent to surrendering her legal custody as the primary residential parent. *See In re Marriage of Taddeo-Smith*, 127 Wn. App. 400, 402, 110 P.3d 1192 (2005) (holding that as the custodial parent, the mother's agreement to allow the father to temporarily care for their children while she was hospitalized was not equivalent to consenting to

surrender her legal custody). But the trial court's findings in support of modification are supported by substantial evidence in the record.

Based on this evidence, the trial court expressly found that it was in ML's best interest to grant modification because ML has been living primarily with Lail for the last several years and given the trial court's concerns that changing environments to live with Briggs would be more detrimental than beneficial to ML. The best interest of a child is served when the existing pattern of interaction is altered only to the extent necessary by the changed relationship of the parents or to protect the child from harm. RCW 26.09.002.

The trial court's findings support its conclusion that the parenting plan should be modified to reflect that Lail is and has been ML's primary parent for the past several years and that modification is in ML's best interest. Briggs has failed to show that the trial court abused its discretion, and accordingly we affirm the trial court's modification order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

BJORGEN, C.J.

MAXA, J.