IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 70566-1-I |
| | ) | |
| NANAKO TSUJIMOTO RASKOB, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOSH IAN RASKOB, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: July 21, 2014 |
| | ) | |

VERELLEN, A.C.J. — When a parent violates the relocation provision of an agreed

parenting plan, the trial court has authority to make major modifications to the plan. On

remand, the trial court clarified its basis for finding that Nanako Tsujimoto violated the

relocation provision of her agreed parenting plan with Josh Raskob.[1] Nanako

challenges the trial court's findings of fact and conclusions of law that she violated the

parenting plan. She also argues that the trial court erred in modifying the residential

schedule and relocation provision in the parenting plan and in awarding sanctions and

attorney fees against her. Because sufficient evidence supports the challenged

findings, the trial court's findings support its conclusions of law, the trial court had the

statutory authority to modify the parenting plan and award sanctions, and the trial court

did not abuse its discretion, we affirm. We decline to award any attorney fees on

appeal.

_____

[1] We adopt the parties' practice of referring to themselves by their first names.

FACTS

This case is before us for the second time after Nanako's unilateral relocation of the children to Seattle.[2] Josh argued that Nanako violated the parenting plan's relocation provision that if she moved more than a 30-minute average drive time from his home in Bothell, she must give him 60 days' notice by personal service or by mail requiring a return receipt. Josh decided that it was in the best interests of the children not to try to force them to move again, so he accepted the relocation as a "fait acompli" but sought adjustments or modifications to the parenting plan.

In her prior appeal, Nanako challenged the trial court's determination that she moved more than a 30-minute drive from Josh's residence, thereby triggering the parenting plan relocation notice requirements. She argued that the trial court improperly modified the parenting plan and awarded sanctions. We remanded to the trial court for clarification of the evidence relied upon to determine whether Nanako moved more than a 30-minute drive time from Josh's residence.[3] We also noted that the trial court should take care to comply with the 24-day-per-year modification limit of RCW 26.09.260(5) to the extent that statute applies to the outcome of the remand.[4]

On remand, the trial judge, who had since retired but heard the case on a pro tem basis, entered a clarified order on relocation, a clarified parenting plan, and a clarified order granting motion for attorney fees/sanctions. In the clarified order on relocation, the trial court explained that it relied upon Josh's three recorded drive times

---

[2] In re Marriage of Raskob, noted at 172 Wn. App. 1014, 2012 WL 5992097, at *1-2.

[3] Id. at *4.

[4] Id.

and Nanako's expert's one drive time for an average of about 40 minutes. The trial court found that Nanako's relocation constituted a substantial change in circumstances and adjusted the parenting plan to give Josh an additional 24 full days of residential time. The trial court also adjusted the relocation provision in the parenting plan to require Nanako to give notice by personal service or mail requiring a return receipt if she moves outside of the children's current school attendance boundary. Finally, the trial court ordered Nanako to pay Josh sanctions of $10,500 due to her failure to follow the law and her intransigence.

Nanako appeals.

## STANDARD OF REVIEW

This court reviews trial court decisions dealing with the welfare of children for abuse of discretion.[5] A trial court abuses its discretion when its decision is "'manifestly unreasonable or based upon untenable grounds or reasons.'"[6]

We will reverse a trial court's factual findings only if they are unsupported by substantial evidence.[7] We review whether the trial court's conclusions of law flow from its findings de novo.[8] Unchallenged factual findings are verities on appeal.[9]

---

[5] In re Marriage of Horner, 151 Wn.2d 884, 893, 93 P.3d 124 (2004).

[6] Id. (quoting State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)).

[7] In re Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). "Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." Bering v. Share, 106 Wn.2d 212, 220, 721 P.2d 918 (1986).

[8] Watson v. Dep't of Labor & Indus., 133 Wn. App. 903, 909, 138 P.3d 177 (2006).

[9] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

## DISCUSSION

*Rules of Appellate Procedure*

As a preliminary matter, Josh argues that Nanako complied with RAP 10.3(g) and 10.4(c) only as to the findings that she moved outside the of the 30-minute drive time limit and that she was intransigent. He contends that we should not consider any other factual challenges. We do not identify any other factual challenges by Nanako.

Nanako argues Josh fails to support certain factual statements with citations to the record as required by RAP 10.3(a)(6). We detect no violation, but in any event, consider only facts supported by the record on appeal.

*Compliance with the Parenting Plan*

Nanako argues that the trial court erred in concluding that she violated the 30-minute average drive time relocation requirement in the parenting plan. We disagree.

On remand, the trial court made detailed findings about its determination of the actual drive time:

> The determination that the move was outside the 30 minute average drive time was made by the Court because the most credible actual drive-time evidence was provided by the Father and the Mother's expert witness, Bradley Lincoln. The Mother's computer generated drive time on which she relied, was problematical and lacked persuasiveness and credibility because it was not produced as a result of actual drive times and because much of it, by its very limiting terms, provided that actual drive times might vary depending on actual highway conditions. See, e.g., the attached Trial Exhibit 201 on which the Mother relied at trial as evidence that she had moved within the 30 minute average drive time area. The Mother acknowledged that this evidence was not based on actual driving time. RP 45-52. Exhibit 201 also shows that the drive time would be "up to 35 minutes in traffic." In addition, the Mother's videos of her actual drive time were confusing. Some of the Mother's actual drive times also occurred under abnormal circumstances such as the afternoon of the Fourth of July. (RP 370). Further, the mother had never actually driven between her old and new residences to test the 30 minute average

drive time limitation before she notified the Father of her intent to move and signed a lease for her new residence. RP 50-53.

On the other hand, the drive times by the Father were when the parties would likely actually be on the highway with the children. The Father's evidence of drive times was 45:19, 36:24 and 41:00. This averages out to be about 40 minutes and 54 seconds. This average of over 40 minutes of driving time would not reduce to anything close to under 30 minutes or less even after the time the Father took out to purchase gas was subtracted from the times he offered as evidence.

In addition, the Mother's expert, Bradley Lincoln, testified his average drive time (which omitted Mondays, when the parties might actually be on the highway) averaged at 30.6 minutes. This is more than the 30 minute average drive lime contained in the applicable Parenting Plan.

The Court's finding that the move is beyond the 30 minute average drive time (a provision that was at best a "stretch" for the Father to begin with) is supported by the above averaging of the credible actual drive time evidence provided by the parties to the Court. The Court took judicial notice of some evidence but found it lacked significant credibility. (Computer generated information was problematical insofar as much of it did not appear to contemplate actual driving conditions.). Therefore, the average drive time should not be computed by averaging all of the drive time evidence. Instead it should be computed by averaging all of the credible actual drive time evidence—which is what the court has done in finding that the average drive time was about 40 minutes and that this exceeded the 30 minute standard established by the parties.[10]

The trial court adequately clarified on remand that it used Josh's actual drive times of 45:19, 36:24, and 41:00, as well as Lincoln's drive time of 30.6 minutes, to arrive at an average of "about 40 minutes." This average triggered the parenting plan's relocation notice provisions, which mirror the requirements of RCW 26.09.440. It is undisputed that the only notice Josh received was an e-mail from Nanako, sent one month before her move. This e-mail did not comply or even substantially comply with

---

[10] Clerk's Papers at 1006-07.

the applicable relocation notice requirements. Therefore, Nanako violated the parenting plan.[11]

Nanako makes a series of arguments that are not persuasive. First, the trial court was not required on remand to engage in a more detailed description of the data it considered and the computations it utilized. Second, to the extent there is any inconsistency between the trial court's oral statements regarding the computer generated drive times and the court's clarified findings, the written findings and conclusions control.[12] As clarified, it is clear the trial court rejects the computer information. Third, the trial court considered the written materials submitted by Nanako on remand, and she provides no authority that the parties were entitled to oral argument. Finally, she argues that, in the absence of a violation, she was required to give only actual notice under RCW 26.09.450(1). But the record supports the trial court's determination that she did violate the parenting plan relocation provisions.

*Modification of the Residential Schedule in the Parenting Plan*

Nanako argues that the trial court abused its discretion in modifying the residential schedule in the parenting plan. We disagree.

RCW 26.09.260(6), an exception to the requirements of RCW 26.09.260(1), allows a trial court to make a "major" modification to a parenting plan, including an adjustment to the residential schedule "pursuant to a proceeding to permit or restrain a relocation of the child":

---

[11] Nanako also argues that the trial court should have considered the factors of RCW 26.09.470(2)(a) and (c)-(e) in determining whether she complied with the notice requirements. But she does not explain how she satisfied any of those factors. Because claimed errors must be supported by argument, we need not consider this contention. See RAP 10.3(a)(6).

[12] Mairs v. Dep't of Licensing, 70 Wn. App. 541, 545, 854 P.2d 665 (1993).

> The person objecting to the relocation of the child or the relocating person's proposed revised residential schedule may file a petition to modify the parenting plan, including a change of the residence in which the child resides the majority of the time, without a showing of adequate cause other than the proposed relocation itself. A hearing to determine adequate cause for modification shall not be required so long as the request for relocation of the child is being pursued.[13]

Therefore, in a relocation case, it is not necessary for the court to consider whether there is a substantial change in circumstances other than the relocation itself, or to consider the factors contained in RCW 26.09.260(2).[14]

Here, Nanako never abandoned her relocation and did, in fact, relocate in violation of the parenting plan. Therefore, RCW 26.09.260(6) applies, and the trial court was not required to find some other substantial change in circumstances or consider the factors of RCW 26.09.260(2). The trial court did not abuse its discretion in modifying the residential schedule under these circumstances.

Nanako argues that modification of the parenting plan is improper because Josh did not request additional time with the children when he objected to her relocation. But she provides no compelling authority for such a requirement. The plain language of RCW 26.09.260(6) states that the court "may order adjustments to the residential aspects of a parenting plan pursuant to a proceeding to permit or restrain a relocation of the child." Because the modification was made pursuant to a proceeding to restrain Nanako's relocation, her argument fails.

Nanako also argues that RCW 26.09.260(6) does not apply because Josh abandoned his objection to relocation and, therefore, the trial court was required to make an adequate cause determination. Josh decided that it was in the best interests

---

[13] RCW 26.09.260(6).

[14] In re Marriage of Grigsby, 112 Wn. App. 1, 15, 57 P.3d 1166 (2002).

of the children not to try to force them to move again, so he accepted the relocation as a "fait acompli" while seeking adjustments or modifications to the parenting plan based upon Nanako's violation. Nanako's argument that Josh waived the ability to obtain such relief because he agreed to the move after the fact is not persuasive. Josh did not forgo any remedies based upon Nanako's violations of the parenting plan.

Nanako argues that the modification to the residential schedule was improper because the requirements of RCW 26.09.260(2) and (5) are not met.[15] While it does appear from the trial court's order on relocation that it intended the revised parenting plan to satisfy the requirements of RCW 26.09.260(5), we may affirm on any basis supported by the record.[16] We conclude that RCW 26.09.260(2) and (5) do not apply because, as explained above, modification was proper under RCW 26.09.260(6).[17]

Finally, Nanako objects to the modification, contending that it was only done to sanction her and did not consider the children's best interests. The trial court's order does contain language to the effect that it modified the parenting plan to compensate Josh. But it also ruled that "[i]t is in the best interest of the children to adjust the original

---

[15] Nanako argues that RCW 26.09.260(5) is not satisfied because the modification exceeds the 24-day limit and changes the residence where the children are scheduled to reside a majority of the time. In their respective briefs, Nanako and Josh include differing calculations of the total number of days awarded to each in the three different parenting plans entered by the trial court. Because RCW 26.09.260(6) does not require us to determine whether the number of days awarded, as modified, exceed a statutory limitation, we do not address whether the parties' calculations are correct.

[16] MHM&F, LLC v. Pryor, 168 Wn. App. 451, 461, 277 P.3d 62 (2012).

[17] Unlike RCW 26.09.260(5), section (6) does allow a trial court to change the residence in which the children reside the majority of the time and does not include a limitation on the number of days changed.

Parenting Plan in order to try and make it more workable and less problematic."[18]

Nanako's argument fails.

*Modification of the Relocation Provision of the Parenting Plan*

Nanako argues that the trial court erred by altering the parenting plan's relocation provision. We disagree.

RCW 26.09.260(10) permits a trial court to "order adjustments to any of the nonresidential aspects of a parenting plan upon a showing of a substantial change of circumstances of either parent or of a child, and the adjustment is in the best interest of the child." This section expressly relieves a trial court from addressing the considerations listed in RCW 26.09.260(2).

Here, the trial court replaced the 30-minute average drive time provision in the parenting plan with the following language:

> If the move is outside the child's current school district (i.e., the John Stanford International School attendance area boundary in Seattle, Washington) the relocating person must give notice by personal service or by mail requiring a return receipt.[19]

In its clarified order on relocation, the trial court found that Nanako's decision to relocate and her relocation outside the 30-minute average drive time agreed to in the original parenting plan "constitute[d] a substantial change in circumstances not in the contemplation of the parties when the original Parenting Plan was agreed to and entered."[20] It also found that "[i]t is in the best interest of the children to adjust the original Parenting Plan in order to try and make it more workable and less

_____

[18] Clerk's Papers at 1008.

[19] Id. at 1033.

[20] Id. at 1006.

problematic."[21] Because the trial court made the necessary findings in altering the relocation provisions, it did not abuse its discretion.

Nanako claims that the trial court's actions constituted a limitation or restriction within the meaning of RCW 26.09.191, requiring it to adhere to that statute's requirements. But the trial court expressly stated in its order that "the Mother who is entitled to residential time with the children is not subject to limitations under RCW 26.09.191."[22]

Nanako characterizes the adjustment of the relocation provision as a "geographic limitation," citing In re Marriage of Katare.[23] But unlike Katare, which involved a restriction preventing the father from traveling with his children outside of the United States, no similar restriction has been placed on Nanako's ability to move. Rather, the provision simply requires Nanako to provide Josh with statutory notice should she decide to relocate outside of John Stanford's boundaries.

Finally, Nanako argues that the trial court impermissibly altered the meaning of "school district" under the Child Relocation Act by requiring her to give Josh statutory notice even if she moves within the Seattle School District but outside John Stanford's boundaries. Generally, a parent who moves within the same school district is only required to give actual notice.[24] But Nanako has cited no authority precluding the court

---

[21] Id. at 1008.

[22] Id. at 1004.

[23] 125 Wn. App. 813, 105 P.3d 44 (2004).

[24] RCW 26.09.450.

from requiring more notice.[25] At dissolution, the parties negotiated a specific relocation provision to fit their circumstances. Nanako has failed to show that the trial court, in attempting to prevent future disputes, was prohibited from altering the parties' negotiated provision to better fit the changed circumstances.

### Trial Court Award of Attorney Fees and Sanctions

Nanako argues that the trial court abused its discretion by assessing sanctions against her and awarding Josh a portion of his attorney fees. We disagree.

Under RCW 26.09.470(1), "[t]he failure to provide the required notice is grounds for sanctions." Additionally, a trial court may consider whether additional legal fees were caused by one party's intransigence and award attorney fees on that basis.[26] "Intransigence is the quality or state of being uncompromising."[27] "Awards of attorney fees based upon the intransigence of one party have been granted when the party engaged in 'foot-dragging' and 'obstruction' . . . or simply when one party made the trial unduly difficult and increased legal costs by his or her actions."[28]

Here, the trial court assessed monetary sanctions of $10,000 in attorney fees and $500 in costs against Nanako.[29] In support of these sanctions, the trial court entered the following findings:

---

[25] See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

[26] In re Marriage of Greenlee, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992).

[27] Schumacher v. Watson, 100 Wn. App. 208, 216, 997 P.2d 399 (2000) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1186 (1993)).

[28] Greenlee, 65 Wn. App. 708 (quoting Eide v. Eide, 1 Wn. App. 440, 445, 462 P.2d 562 (1969)).

[29] Clerk's Papers at 990.

1. Petitioner relocated with the parties' children without complying, or even substantially complying with the statutory relocation notice requirement.

2. Petitioner's failure to follow the law was consistent with her rigid attitude toward parenting issues and her difficulty in reasonably communicating with respondent regarding the parenting of the parties' children-as described in the Courts Order re Relocation, which is incorporated by this reference into this Order.

3. Petitioners' failure to follow the law, and her intransigence, created a fait accompli and status quo that made a denial of the relocation, however technically merited, contrary to the best interests of the children and would punish the children for the errors of the petitioner. Respondent recognized this and consented to the relocation.

4. Respondent is entitled to sanctions arising out of the petitioner's actions. The sanctions should include both monetary sanctions and a practical adjustment of the Parenting Plan to compensate the Father, however inadequately, for the added parenting inconvenience caused by the petitioner's unilateral relocation with the children and the resulting legal proceedings and related expense.[30]

Because Nanako failed to comply with the notice requirements for relocation as outlined in the parenting plan, the trial court did not abuse its discretion in awarding sanctions.

Nanako challenges the trial court's finding 3 above that she was intransigent. But she does not challenge finding 4, a verity on appeal, that her unilateral relocation resulted in legal proceedings and expense, conduct within the definition of intransigence. Furthermore, the relocation order, which was incorporated by reference into the order assessing sanctions, is consistent with this finding.[31] In section 2.6, the trial court made the following unchallenged finding about how Nanako's actions made the trial more difficult:

---

[30] Id. at 991-92.

[31] See id. at 991.

> The Mother's relocation "notice" . . . failed to provide the Father with important relevant information such as the reasons for the move, the children's new school and a proposed new parenting plan. If this information had been timely provided to the Father, it might have eliminated or reduced the litigation that followed the notice and it might have allowed the parties to try and resolve their differences through the dispute resolution or parenting facility/coach processes already contained in their Parenting Plan. Because of the Mother's unilateral and statutorily inadequate action, one will never know if available alternate and less expensive means of resolving this matter might have been successful.[32]

Nanako's failure to abide by the notice requirements for relocation made the proceedings more difficult and, arguably, increased Josh's legal fees. An award of sanctions and attorney fees was within the trial court's discretion.

Nanako argues that the award of sanctions and attorney fees was improper because it conflicts with the trial court's oral ruling that she did not act in bad faith. But bad faith and intransigence are not necessarily synonymous. Further, an oral decision of the trial court which is inconsistent with its written findings and conclusions may not be used to impeach such findings.[33]

Nanako also argues that the trial court abused its discretion in failing to award her attorney fees based upon her financial need and the frivolous nature of Josh's claims. While the evidence at trial indicated that Nanako has limited financial resources, Josh is in no better financial position, owing his parents nearly $200,000. Nanako contends that Josh's claims were frivolous because he abandoned his objection to the relocation after it occurred. But as the trial court noted, Josh did not abandon his

---

[32] Id. at 1007.

[33] Mairs, 70 Wn. App. at 545. Nanako cites Miles v. Miles, 128 Wn. App. 64, 71, 114 P.3d 671 (2005), for the proposition that it is appropriate to consider an oral decision where later written findings are inapposite. But in that case, the appellate court looked to the oral decision because the judge who signed the written findings did not hear the evidence presented and the written findings did not find support in the transcript of the oral ruling. Id. at 70 n.5. That narrow situation does not apply here.

other concerns surrounding the impact of Nanako's relocation on Josh's parental rights. Because Josh's claims were not frivolous, Nanako has not shown that the trial court abused its discretion by denying her attorney fee request.

*Attorney Fees on Appeal*

Both Nanako and Josh claim entitlement to fees on appeal. Under RAP 18.1, we may award attorney fees if authorized by applicable law. RCW 26.09.140 provides for attorney fees on appeal. In exercising discretion under this statute, we consider the arguable merit of the issues on appeal and the parties' financial resources.[34] A party must timely file a financial declaration for his or her resources to be considered.[35]

Josh filed a financial declaration with this court that indicates financial need. But under all of the circumstances, we decline to award him attorney fees on appeal.

Nanako has not filed a financial declaration with this court. We decline to award her attorney fees on appeal.

Affirmed.

WE CONCUR:

_Beckere, J._

---

[34] In re Marriage of C.M.C., 87 Wn. App. 84, 89, 940 P.2d 669 (1997).
[35] RAP 18.1(c).