# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

In Re the Matter of:

AMANDA LEANN PELLANDA (formerly Orse).

Appellant,

v.

RYAN GARRETT SCHWARDER,

Respondent.

No. 48338-6-II

UNPUBLISHED OPINION

SUTTON, J. — Amanda Pellanda (fka Amanda Orse) appeals the trial court's order denying relocation and order establishing a 50/50 permanent residential schedule for her three minor children.

We hold that the trial court erred in ruling that Amanda Pellanda was not the primary parent and was not entitled to a rebuttable presumption favoring relocation. This error was compounded when the trial court entered findings of fact on relocation which are not supported by substantial evidence and further erred by denying her relocation petition. In addition, the trial court erred when it entered a 50/50 permanent residential schedule based on findings of fact that are not supported by substantial evidence. Thus, we reverse the trial court's order denying relocation and the final parenting plan order establishing a 50/50 permanent residential schedule and remand. On remand, we require that this matter be assigned to a different trial judge and that the matter be handled as expeditiously as possible. And we instruct the trial court to properly apply the primary

parent designation and rebuttable presumption under RCW 26.09.520, and enter a new permanent residential schedule after considering all factors under RCW 26.09.187(3).

FACTS

I. BACKGROUND

Amanda Orse and Ryan Schwarder began a relationship in late 2005. They had three children: R.S., A.S., and S.S.[1] When the relationship ended in October 2013, Ryan[2] told Amanda to move out and take the children. Amanda and the children moved in with Amanda's parents.

Amanda met Brendan Pellanda in August 2014. Amanda and Pellanda were married in August 2015. Pellanda serves in the United States Army, and was transferred to Fort Sill, Oklahoma. If he had declined the transfer, Pellanda would have been required to leave the military. He earned $4500 a month.

Amanda and Pellanda found a home in Lawton, Oklahoma near Fort Sill where they hoped to relocate. Amanda had been working as a dispatcher earning $15 per hour. Amanda and Pellanda investigated Lawton, Oklahoma and believed that her job prospects were good because there was a large military community.

II. PROCEDURAL HISTORY

A. NOTICE TO RELOCATE AND TEMPORARY PARENTING PLAN

In April 2015, Amanda filed a notice of her intent to relocate with the children to Oklahoma to join Pellanda after their wedding. She proposed a parenting plan designating her as the primary

---

[1] We refer to the minor children by their initials to protect their privacy.

[2] For clarity, we refer to the parties by their first names and we mean no disrespect.

parent, and provided Ryan with residential time every other Christmas, during spring break, and for three weeks in July for the first summer with increasing summer residential time as the children became older. She also agreed to make the children available when Ryan or other family members came to visit. Although Ryan largely agreed with the parenting plan, he filed an objection to the relocation based on the detrimental impact the relocation would have on the children.

Because the parties had not previously entered a residential schedule or parenting plan, at the end of June, the trial court ordered a week on/week off (50/50) temporary residential schedule and designated both parents as the custodial parents. This temporary residential schedule was in effect until the relocation petition could be heard in early October.

B. RELOCATION HEARING

At the relocation hearing, the trial court heard the following testimony and evidence. Amanda testified that during the relationship, she paid the rent and utilities, took the children to their appointments, and did the grocery shopping. While Amanda worked during the day, Ryan watched the children. Ryan did not contribute financially to the household.

When the relationship ended in October 2013, R.S. was six years old, A.S. was two years old, and S.S. was three months old. The children lived with Amanda full time until the entry of the temporary parenting plan order in June 2015. Ryan provided child care during the weekdays because he did not have a job. Amanda dropped the children off at Ryan's in the morning and she picked them up in the evening after she finished work because he did not have a car. The children were also scheduled to stay with Ryan every other weekend. Ryan began to refuse to watch the children during the week, often giving short notice. As a result, in April 2014, Amanda enrolled the children in full-time daycare and advised Ryan that she was doing so because he consistently

3

refused to watch the children with little or no notice during times when Amanda was working. He did not object to placing the children in full-time daycare and he did not contribute to the cost of daycare.

After April 2014, Amanda and Ryan agreed that the children would spend every Wednesday night with Ryan in addition to every other weekend. Amanda continued to provide transportation for the children during Ryan's residential time. During this period, if the children were ill or if Ryan chose not to exercise his residential time for another reason, the children stayed with Amanda. Amanda continued to pay for the children's daycare. Pellanda testified that Ryan cancelled his residential time on many Wednesdays and weekends, for Thanksgiving and Christmas holidays in 2014, and for the 2015 Super Bowl.

Ryan's employment history was sporadic–he worked an average of 30 hours a month from 2001-2013. In early 2007, he sustained a back injury on the job and filed a claim with the Department of Labor and Industries. The claim was closed three months later due to Ryan's lack of medical follow-up. In 2011 and 2013, Ryan sought medical care for back pain. In early 2014, Ryan had back surgery, and at the end of that year, he was released to return to work. At the time of the hearing, Ryan had been working for three weeks.

Ryan has another child, D.C., from a prior relationship. Amanda met D.C. once in 2005. R.S., A.S., and S.S. have never met D.C. D.C. was six years old when Ryan and D.C.'s mother ended their relationship; at the time of the hearing, D.C. was age 15 and lived in Alaska. Ryan

began dating his current girlfriend, Jenny Lee, [3] soon after he and Amanda ended their relationship. Amanda's parents, Pellanda's mother, Ryan's mother and her fiancé, and Lee all live within Tacoma or a neighboring county. Amanda testified that the children's extended family could visit the children in Oklahoma and that she would encourage communication between the children and Ryan and with the extended family.

C. TRIAL COURT'S ORDERS

    1. Relocation Rebuttable Presumption and Order Denying Relocation[4]

At the fact-finding hearing, the trial court ruled that no parent was the primary residential parent and Amanda was not entitled to the rebuttal presumption under RCW 26.09.520. III VRP at 10.

The trial court found that

this is a 50/50 residential time situation.

. . . .

[E]ven if the petitioner is deemed the primary parent, which would create a rebuttable presumption that the intended relocation would be permitted when the primary residential parent is the person intending to relocate, the presumption has been rebutted as the [c]ourt has addressed Factors I through 10 listed in RCW 26.09.520. Factor 11 is not addressed, as the trial is the final decision making process.

    Alternatively, if the relocation factors had applied, the [c]ourt finds in favor of the respondent/father and that based upon the following factors, the detrimental effect of allowing the children to move with the relocating person does outweigh the benefits of the move to the children and the relocating person.

---

[3] The trial court referred to Lee as Ryan's fiancé, but the testimony at trial established that Lee was Ryan's girlfriend.

[4] Order on Objection to Relocation/Modification of Custody Decree/Parenting Plan/Residential Schedule (Nov. 6, 2015). CP at 29-36.

Clerk Papers (CP). The trial court found that it was not in the children's best interest to relocate from Washington, given their relationship with Ryan and other nearby family members. The trial court also found that denying the relocation will allow Amanda and Ryan to build and stabilize their new relationships. Although the trial court found Ryan's lack of a stable living arrangement "not encouraging," the court also found that Ryan had made the visitation arrangement work. III Verbatim Report of Proceedings (VRP) at 7. Based on its findings of fact, the trial court denied the petition to relocate.

2. Permanent Residential Schedule[5]

As to the permanent residential schedule, the trial court copied the findings of fact from the relocation order and adopted them verbatim as the findings of fact for the residential schedule. Compare CP at 30-32 with CP at 3-6. The trial court did not make separate findings of fact after considering the factors under RCW 26.09.187(3). At the time of the hearing, the children were ages 8, 4, and 2. The trial court found that

> over the nine years, the parents' involvement with caring for the children has been conditional on circumstances in regards to their relationship, which dictated their parental responsibilities. These circumstances included their work schedules and their physical ability to work. The [c]ourt notes that the youngest child, [S.S], is two years old, which means that most of these issues did not disrupt many years of their union, as evidenced by three beautiful young [children].
>
> Following the end of the parties' relationship in October 2013 the children resided with mother and spent every other weekend with father. Father provided care during the day while the mother worked.
>
> In April 2014 mother placed the children in full-time daycare and father continued to see the children every other weekend and began seeing them every

---

[5] Findings of Fact and Conclusions of Law on Petition for Residential Schedule/Parenting Plan or Child Support (Nov. 6, 2015). CP 1-6.

Wednesday. This schedule continued until June 2015 when the court entered a temporary order.

. . . .

*The [c]ourt finds the present alternating week-on and week-off residential schedule creates brief and substantially equal intervals of time. The parties' parenting relationship was and has been a substantially equal-time parenting residential schedule, essentially a 50/50 residential time split situation, and case law indicates that an exact mathematical precision is not determinative.*

CP at 4-5 (emphasis added).

The trial court concluded that "this is a 50/50 residential time situation where both parties are the custodians of the children." CP at 6. The trial court adopted a 50/50 permanent residential schedule based on its earlier findings and the temporary residential schedule. Amanda appeals.

ANALYSIS

I. STANDARD OF REVIEW

We review a trial court's decision to deny relocation and to enter a residential schedule in a permanent parenting plan for an abuse of discretion. *In re Marriage of McNaught*, 189 Wn. App. 545, 552, 359 P.3d 811 (2015), *review denied*, 185 Wn.2d 1005 (2016); *see also In re Marriage of Horner,* 151 Wn.2d 884, 893, 93 P.3d 124 (2004). An abuse of discretion occurs when a decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). "'A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do

not meet the requirements of the correct standard.'" *Horner*, 151 Wn.2d at 894 (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)).

We review a trial court's findings of fact to determine if they are supported by substantial evidence. *In re Marriage of Raskob*, 183 Wn. App. 503, 510, 334 P.3d 30 (2014). Substantial evidence is that which is sufficient to persuade a fair-minded individual of the truth of the matter asserted. *Katare*, 175 Wn.2d at 35. The party challenging the findings of fact has the burden of demonstrating that substantial evidence does not exist. *In re Marriage of Grigsby,* 112 Wn. App. 1, 9, 57 P.3d 1166 (2002).

We review de novo whether the trial court's findings of fact support the trial court's conclusions of law. *Raskob*, 183 Wn. App. at 510. We do not reweigh evidence on appeal. *In re Marriage of Kim*, 179 Wn. App. 232, 244, 317 P.3d 555, (2014). We review a trial court's application of the law de novo. *In re Marriage of Wehr*, 165 Wn. App. 610, 613, 267 P.3d 1045 (2011).

## II. RELOCATION

### A. LEGAL PRINCIPLES

Washington's Child Relocation Act (CRA), RCW 26.09.405-.560, adopts a rebuttable presumption to allow relocation of the parent "with whom the child resides a majority of the time." RCW 26.09.430, .520; *see In re Parentage of R.F.R.*, 122 Wn. App. 324, 330, 93 P.3d 951 (2004); *see also Horner*, 151 Wn.2d at 895. The CRA shifts the analysis away from the best interests of the child to an analysis that focuses on the interests of the child and the relocating person. *Horner*, 151 Wn.2d at 895. The CRA incorporates and relies upon the traditional presumption that a fit parent acts in his or her child's best interest, including when that parent relocates the child. *Horner*,

151 Wn.2d at 895. Rather than focusing on the child's best interests, RCW 26.09.520 gives import

to the "interests and circumstances of the relocating person:"

> [C]onsideration of all the factors is logical because they serve as a balancing test between many important and competing interests and circumstances involved in relocation matters. Particularly important in this regard are the interests and circumstances of the relocating person. Contrary to the trial court's repeated references to the best interests of the child, the standard for relocation decisions is not only the best interests of the child.

*Horner*, 151 Wn.2d at 894 (footnote omitted).

The CRA requires a trial court to analyze eleven factors to determine if relocation should

be permitted. *Horner*, 151 Wn.2d at 887-88. The eleven relocation factors are:

> (1) The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;
> (2) Prior agreements of the parties;
> (3) Whether disrupting the contact between the child and the person with whom the child resides a majority of the time would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;
> (4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191;
> (5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;
> (6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;
> (7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;
> (8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;
> (9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;
> (10) The financial impact and logistics of the relocation or its prevention; and
> (11) For a temporary order, the amount of time before a final decision can be made at trial.

RCW 26.09.520. The factors are equally important because they are neither weighted nor listed in any particular order. RCW 26.09.520. Of these eleven factors, four factors focus on the child's interest. *Horner*, 151 Wn.2d at 894 n.9. A trial court must document its consideration and enter specific findings of fact on each factor under RCW 26.09.520. *Horner*, 151 Wn.2d at 895-96.

Under the CRA, a person who resides a majority of the time with a child initiates the relocation process by serving notice to all persons entitled to residential time or visitation with the child. RCW 26.09.430. If a person who is entitled to residential time or visitation with the child files an objection to the relocation, the person seeking to relocate the child may not do so without court approval. RCW 26.09.480(2). Upon a proper objection, a trial court must conduct a fact-finding hearing. *Wehr*, 165 Wn. App. at 612. To rebut the presumption, an objecting person must demonstrate by a preponderance of the evidence "that the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person, based upon the [child relocation] factors." RCW 26.09.520; *Wehr*, 165 Wn. App. at 613.

B. PRIMARY PARENT DESIGNATION AND THE PRESUMPTION

The trial court erred in ruling at the relocation hearing that neither parent was the primary parent of the children. The trial court based its ruling on the temporary residential schedule, and its finding of fact that "this is a residential time situation where both parties are the custodians of the children." CP at 32 (FOF 2.3(vi)). The trial court's findings of fact—that no parent was the primary caregiver and that they shared equal parenting functions during their relationship—was not supported by substantial evidence.

The temporary 50/50 residential schedule had only been in place for four months, from June 2015 until the October 2015 relocation hearing. And the children had lived full time with

Amanda for 21 months from October 2013 until June 2015, when the court entered the temporary parenting plan. During this 21-month period, when the children were ill or when Ryan chose not to exercise his time with the children, Amanda had to take time from work to care for the children. Other times, Amanda's parents provided child care. Amanda could not consistently rely on Ryan to provide child care during the days she worked even though he was unemployed.

After April 2014, when she enrolled the children in daycare, Ryan was scheduled to see the children every other weekend and every Wednesday night. But Amanda and Pellanda testified that Ryan cancelled his residential time on many Wednesdays and weekends, and for some holidays. At the relocation hearing, Amanda testified that she did not know where Ryan lived, but that he had lived primarily with his mother and also claimed to stay with friends and with his new girlfriend.

We hold that the trial court's findings of fact are not supported by substantial evidence and the findings do not support the trial court's conclusion that Amanda was not the primary parent with whom the children spent the majority of time under RCW 26.09.430. We also hold that the trial court's findings of fact do not support its conclusion that Amanda was not entitled to a rebuttable presumption favoring relocation under RCW 26.09.520, as discussed below.

C. REBUTTING THE PRESUMPTION

By not designating Amanda as the primary parent entitled to a rebuttable presumption favoring relocation, the trial court evaluated the relocation factors under RCW 26.09.520 using the wrong lens. As the primary parent of the three children, Amanda was entitled to the presumption favoring relocation including the traditional presumption that a fit parent acts in her children's best interest, including when that parent relocates with the children. *Horner*, 151 Wn.2d at 895

11

The trial court improperly focused on the parties' nine year relationship, which time period included a majority of years before two of the three children were born. And the trial court further erred by not properly evaluating the evidence in light of the relocation factors under RCW 26.09.520. A trial court must consider both the interests of the child *and* the interests of the relocating parent. RCW 26.09.520; *Horner*, 151 Wn.2d at 895.

Ryan testified that the children need their father's love, they need his kisses and hugs. Other than stating that Amanda has never been to Oklahoma, Ryan did not produce any evidence that the relocation would be detrimental to Amanda. *See* RCW 26.09.520; *see also McNaught*, 189 Wn. App. at 549. Ryan testified that the relocation would be detrimental to the children because the schools in Oklahoma are not as good and the move would affect their stability in school. But only the oldest child was school age. Ryan also testified that he would not be able to do activities with them, the children will not get the care or bonding they need, and the children will be away from their family. The trial court found that the schools in both states were comparable.

The trial court made only one positive finding that indicates it considered Amanda's interest in relocating: "[Amanda] is now married to a service member and wants to relocate to build what she sees as a more stable life for herself and the three [children]." CP at 34 (FOF 2.3.5). The trial court made several findings criticizing Amanda (and her new husband) for thier decision to relocate with the children. CP at 33 (FOF 2.3.1). None of the trial court's findings criticizing Amanda and her husband point to any reason why the relocation would not benefit Amanda and her children given her interest in relocating to join her new husband. The trial court failed to adequately address the children's interests and Amanda's interests when evaluating the relocation

factors. Although we do not reweigh the evidence on appeal, we briefly discuss the trial court's findings under a few relocation factors.

1. Child's Relationship

Under the first relocation factor, a trial court must evaluate "[t]he relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life." RCW 26.09.520(1). Instead of evaluating all facets of this factor, the trial court's findings of fact addressed (1) the parties' nine year relationship and the daily care by the parents, (2) that Amanda did not visit Oklahoma, (3) that she filed the request to relocate and got married before a final decision by the court, (4) that she did not fully investigate her benefits as a military wife, (5) Pellanda's lack of prior experience as a parent; (6) that the parties' new relationships needed time to stabilize, and (7) Ryan's inability to maintain employment or have a stable living arrangement. CP at 33 (FOF 2.3.1).

But the trial court's findings of fact did not specifically address each facet of the first relocation factor—the strength, nature, quality and extent of involvement and stability of each of the children's relationship with Amanda and then with Ryan. *See* RCW 26.09.520(1). Nor did the trial court address *each* of the children's relationships with other significant persons in their lives.[6]

---

[6] The testimony established that Ryan's mother and her fiancé lived near the children, but that the rest of his family lived in Eastern Washington and that Ryan had little contact with them. The children had never met Ryan's oldest son who Ryan saw on average once a year. Pellanda's parents no longer planned to live in the area, and Amanda's parents planned to visit Oklahoma if the court granted the petition to relocate.

2. Disrupting Contact

Under the third relocation factor, a trial court must evaluate "[w]hether disrupting the contact between the child and the person with whom the child resides a majority of the time would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation." RCW 26.09.520(3). The trial court found that disrupting contact between the children and Ryan would be more detrimental than disrupting contact between the children and Amanda. CP at 33 (FOF 2.3.3). This finding of fact is significant due to the court's ruling denying Amanda's relocation petition.

But the trial court's finding of fact under the third relocation factor is a conclusory statement with no indication of how the trial court arrived at this finding or what evidence supports this finding. Arguably, every relocation causes some disruption and a finding of disruption could be made in every relocation even where a parent moves across town or to a nearby city. As analyzed above, the trial court erred in finding that Amanda was not the primary parent. Thus, we hold that substantial evidence does not support this finding of fact.

3. Impact of Relocation

Under the sixth relocation factor, a trial court is required to evaluate the impact of a relocation considering "the age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child." RCW 26.09.520(6).

Here, the trial court found that the oldest child's performance at school initially suffered after the parties ended their relationship, but that the child's performance improved and returned to his previous performance. CP at 34 (FOF 2.3.6). The trial court expressly found that "remaining

14

in Washington would be in the children['s] best interest and would allow the children to continue to thrive with the majority of the established family members while [Amanda] and [Ryan] build and stabilize their new relationships." CP at 32. The trial court also found that the "children's interests are best served by not allowing their lives at this time to be disrupted. Everything they know and love is in Washington State." CP at 34 (FOF 2.3.6).

But these findings of fact do not address the impact of the relocation as to *each* child's age, developmental stage, needs of the child, and likely impact on the child's physical, educational, and emotional development. And substantial evidence does not support these findings of fact.

The trial court also ruled that, even if the rebuttable presumption had applied, Ryan rebutted the presumption by a preponderance of the evidence. But as analyzed above, we hold that the trial court erred in concluding that Ryan had rebutted the presumption. *See* RCW 26.09.520; *McNaught*, 189 Wn. App. at 549.

The trial court's findings of fact, that the detrimental effects of the relocation to Amanda and the children outweighed the benefits, are not supported by substantial evidence. Based on these reasons, we hold that the trial court abused its discretion in denying relocation.

## II. THE 50/50 PERMANENT RESIDENTIAL SCHEDULE

Trial courts must determine a residential schedule based on a child's best interest after considering all factors under RCW 26.09.187(3). RCW 26.09.187(3) provides:

> (a) The court shall make residential provisions for each child which encourage each parent to maintain a loving, sable, and nurturing relationship with the child, consistent with the child's developmental level and the family's social and economic circumstances. The child's residential schedule shall be consistent with RCW 26.09.191. Where the limitations of RCW 26.09.191 are not dispositive of the child's residential schedule, the court shall consider the following factors:

(i)   The relative strength, nature, and stability of the child's relationship with each parent;

(ii)  The agreements of the parties, provided they were entered into knowingly and voluntarily;

(iii) Each parent's past and potential for future performance of parenting functions as defined in *RCW 26.09.004(3), including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;

(iv) The emotional needs and developmental level of the child;

(v)   The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;

(vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and

(vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.

Factor (i) shall be given the greatest weight.

(b) Where the limitations of RCW 26.09.191 are not dispositive, the court may order that a child frequently alternate his or her residence between the households of the parents for brief and substantially equal intervals of time if such provision is in the best interests of the child.  In determining whether such an arrangement is in the best interests of the child, the court may consider the parties geographic proximity to the extent necessary to ensure the ability to share performance of the parenting functions.

*Reviser's note:  RCW 26.09.004 was alphabetized pursuant to RCW 1.08.015(2)(k), changing subsection (3) to Subsection (2).

RCW 26.09.004(2) defines "parenting functions" as "those aspects of the parent-child relationship in which the parent makes decisions and performs functions necessary for the care and growth of the child."  "Parenting functions" include:

(a) Maintaining a loving, stable, consistent, and nurturing relationship with the child;

(b) Attending to the daily needs of the child, such as feeding, clothing, physical care and grooming, supervision, health care, and day care, and engaging in other activities which are appropriate to the developmental level of the child and that are within the social and economic circumstances of the particular family;

(c) Attending to adequate education for the child, including remedial or other education essential to the best interests of the child;

(d) Assisting the child in developing and maintaining appropriate interpersonal relationships;

(e) Exercising appropriate judgment regarding the child's welfare, consistent with the child's developmental level and the family's social and economic circumstances; and

(f) Providing for the financial support of the child.

RCW 26.09.004(2). RCW 26.09.191(5) provides, "In entering a permanent parenting plan, the court shall not draw any presumptions from the provisions of the temporary parenting plan."

The trial court found that "the present alternating week-on and week-off residential schedule creates brief and substantially equal intervals of time." CP at 4. That schedule was created by the temporary residential schedule. The trial court erred in drawing any presumption from the temporary residential schedule.

When establishing a permanent residential schedule in a final parenting plan, a trial court weighs the evidence against each of the criteria under RCW 26.09.187(3), giving the most weight to the first criteria, the "strength, nature, and stability of the child's relationship with each parent." RCW 26.09.187(3)(a)(i). In making its findings to support a 50/50 permanent residential schedule, the trial court merely adopted verbatim the findings of fact from the relocation order and failed to enter separate findings of fact as to each residential schedule factor as required under RCW 26.09.187(3). Based on its unsupported finding of fact that the parents equally shared parenting duties, and without entering separate findings as to each residential schedule factor, the trial court erred by ordering a 50/50 permanent residential schedule in the final parenting plan. Thus, we reverse this order. Because we reverse the trial court's order denying relocation, we order the trial

court on remand to enter a new permanent residential schedule after evaluating all factors under RCW 26.09.187(3).

## CONCLUSION

We reverse the trial court's order denying relocation and the final parenting plan order establishing a 50/50 permanent residential schedule and remand. On remand, we require that this matter be assigned to a different trial judge and that the matter be handled as expeditiously as possible. And we instruct the trial court to properly apply the primary parent designation and rebuttable presumption under RCW 26.09.520, and enter a new permanent residential schedule after considering all factors under RCW 26.09.187(3).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, A.C.J.

WORSWICK, J.